*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* P. KOPAH, Minor.

UNPUBLISHED
June 10, 2026
1:57 PM

No. 376131
Huron Circuit Court
Family Division
LC No. 25-005113-NA

Before: REDFORD, P.J., and WALLACE and LIEVENSE, JJ.

PER CURIAM.

Respondent appeals by right the circuit court order removing her child from her home, arguing that the Department of Health and Human Services (DHHS) failed to provide her with reasonable efforts to prevent the child's removal and that the court failed to make necessary findings before removing the child. We disagree and affirm.

## I. FACTUAL BACKGROUND

In 2023, respondent received and successfully completed services after having difficulty managing the child, who has attention deficit hyperactivity disorder and is too young to be medicated. During an investigation in 2025, when the child was four years old, DHHS discovered that respondent's parenting put the child in danger. For example, on April 30, 2025, the child came to school with scratches and bruises on his face. While the marks were not conclusive for abuse, respondent reported that she could not manage the child's behavior. Children's Protective Services (CPS) followed up by visiting respondent's home, where respondent and her father, who is disabled, stated she was "overwhelmed" by the child's behavior, and the child was "out of control." A series of incidents occurred in May 2025, including one where respondent left the child in the car with her father, the child escaped the vehicle, and he was found walking down the road in rainy 45-degree weather.

On June 2, 2025, respondent again left the child with respondent's father in a vehicle while she attended a horse show, the child escaped, and he was found half a mile away on a sidewalk next to a busy road. Police responded and contacted respondent, but she was more concerned about the horse show. That day, CPS and law enforcement tried three times to visit respondent's

-1-

home. On the third try, respondent agreed to speak with them. CPS found that many of the tools it had previously given respondent to monitor the child were broken so they replaced them and reminded respondent to participate in available services.

Respondent was referred to Families Together Building Solutions, Families First Services, and both verbal and written safety plans were created multiple times. However, a Families First service provider observed on June 5 that respondent failed to intervene when the child ran into the road after a grocery trip. CPS provided more services on June 7, 2025. Yet on June 12, 2025, during a Families First home visit, respondent locked the child in his bedroom for 30 minutes despite being told multiple times not to and respondent stated that she did not care about what CPS said, that it was her house, and she would do what she wanted. Respondent also told CPS she wanted the child to go to a "mental home" because she could no longer handle him.

DHHS was concerned that respondent's lack of supervision would endanger the child. That same day, June 12, 2025, the trial court ordered the child to be taken into protective custody, the child was removed from respondent's home and placed in foster care,[1] and a petition for the court to assume jurisdiction over the child was offered for filing. The petition included 17 pages of documentary support. The court held a hearing within 24 hours as required, but it was adjourned to give respondent's court appointed attorney time to review the case with respondent.

The hearing resumed on June 17, 2025, after which the referee determined there was probable cause to believe the allegations in the petition were true and found it was contrary to the child's welfare to remain in the home. The referee also determined reasonable efforts had been made to prevent the child's removal, and that respondent did not benefit from or participate or cooperate in offered services. The trial court issued an order authorizing the petition, the child remained in DHHS's care, and respondent received supervised parenting time in the interim. Respondent now appeals that order.

## II. STANDARD OF REVIEW

Generally, this Court reviews a trial court's factual findings at a removal hearing for clear error. *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020). A finding is clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake. *Id*.

## III. REASONABLE EFFORTS

Respondent argues that the court erred by removing the child from the home because she was not given sufficient services to prevent removal. Before ordering a child be placed outside the child's home, the court must make findings regarding whether reasonable efforts have been made to prevent the child's removal. MCR 3.965(C)(4). It is preferable for the court to place the child in the child's own home. MCR 3.902(B)(1). When making reasonable-efforts findings, "the child's health and safety must be of paramount concern to the court." MCR 3.965(C)(4). Relevant

---

[1] In compliance with MCL 722.954a(2), DHHS tried to have the child placed with respondent's mother, but she declined.

considerations may include a history of prior intervention by DHHS, the existence of a safety plan, and whether a parent has complied with DHHS's requests. *Benavides*, 334 Mich App at 169.

In this case, respondent had a prior history of intervention. She was involved with DHHS in 2023 and completed services, but at the time of the present case, respondent still had the same issues with managing the child's behavior. After the April 30, 2025 report, DHHS and respondent agreed to both verbal and written safety plans to keep the child safe, but respondent did not comply with them. Although respondent had a comparatively brief period to work with services before the child was removed, during that time respondent was reluctant to participate in services and the petition laid out specific incidents that occurred between June 2 and 12. This evidence supports the referee's conclusion both that DHHS made reasonable efforts to teach respondent safe parenting and provide her resources and that respondent was not interested in the help.

We conclude that the referee did not clearly err by finding that DHHS made reasonable efforts to prevent the child's removal from the home.

## IV. COURT-RULE COMPLIANCE

Respondent also argues that the referee failed to make sufficient findings before ordering the child to be placed in foster care. As an initial matter, this issue is not preserved. To preserve an issue concerning a preliminary hearing in a neglect proceeding, the party must raise it before the trial court. *In re Barber/Espinoza*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 167745); slip op at 14. In this case, at the combined removal and preliminary hearing, respondent did not argue that the court failed to comply with our court rules before removing the child. This Court reviews unpreserved issues in child-protective proceedings for plain error. *Id*. at ___; slip op at 14. The respondent must establish that (1) an error occurred, (2) the error was clear or obvious, and (3) that the error affected the respondent's substantial rights. *Id*. at ___; slip op at 14. This Court must then consider whether the error "seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Id*. at ___; slip op at 14 (quotation marks and citation omitted).

At the preliminary hearing, "the court must decide whether to authorize the filing of the petition and, if authorized, whether the child should remain in the home, be returned home, or be placed in foster care pending trial." MCR 3.965(B)(12). "If placement is ordered, the court must make a statement of findings, in writing or on the record, explicitly including the finding that it is contrary to the welfare of the child to remain at home and the reasons supporting that finding." MCR 3.965(C)(3). The court is required to make five findings before placing the child in foster care:

(a) Custody of the child with the parents presents a substantial risk of harm to the child's life, physical health, or mental well-being.

(b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk as described in subrule (a).

(c) Continuing the child's residence in the home is contrary to the child's welfare.

(d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare. [MCR 3.965(C)(2).]

A preponderance of the evidence must support the trial court's findings. *In re Williams*, 333 Mich App 172, 183; 958 NW2d 629 (2020).

Regarding Factor (a), the referee found that the child's placement with respondent presented a substantial risk of harm. Specifically, the referee found that respondent's failure to comply with suggestions and the safety plan placed the child at risk. The services specialist testified that risks to the child included being hit by a car, being exposed to the elements, or being picked up by a stranger. Given these dangers and respondent's outright refusal to work with DHHS to keep the child safe, the referee's finding was sufficient and not clearly erroneous.

Regarding Factor (b), the referee found that no service could be provided to adequately safeguard the child. The referee found that services had been put in place, including door alarms and a safety plan, but again, respondent would not follow the safety plan and respondent appeared to be incapable of following directions. Regarding Factor (c), the referee referred to a prior order, in which the court found that it was contrary to the child's welfare to remain in respondent's care on the basis of the child's being strapped into respondent's car, being locked in his room with a bungee cord, and twice running away to the road. Regarding Factor (d), as previously discussed, the referee did not err by finding that reasonable efforts had been made to prevent the child's removal. Again, these findings are sufficient and supported by the record.

Regarding Factor (e), we agree with respondent that the record does not contain any specific findings to support the referee's ultimate finding that placement away from the home would be adequate to safeguard the child's welfare. However, we conclude that reversal is not warranted under a plain-error standard.

An error is clear or obvious "when it is contrary to well-settled law." *People v Swenor*, 336 Mich App 550, 564; 971 NW2d 33 (2021).[2] It is well-settled that a court must make findings regarding each factor of MCR 3.965(C)(2). *Williams*, 333 Mich App at 183. Accordingly, the referee's error was clear. However, we are not convinced that the error affected respondent's substantial rights. An error has affected the respondent's substantial rights if the error affected the outcome of the proceedings. *In re MJC*, 349 Mich App 42, 48; 27 NW3d 122 (2023). The respondent has the burden of persuasion regarding prejudice. *Id*. In this case, when asked what measures could keep the child safe, DHHS's services specialist opined that a parent should work with service providers to manage the child's behavior. This testimony infers that the child can be kept safe if a foster-care placement is willing to work with DHHS to manage the child's behavior,

---

[2] This Court has applied standards in criminal proceedings by analogy to child-protective proceedings. See *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016).

and we are not convinced that, had the referee made a specific finding under MCR 3.965(C)(2)(e), the outcome of respondent's proceeding would have been different.

Regardless, any error does not warrant reversal because it did not seriously affect the fairness of respondent's proceedings. This prong of the plain-error analysis is both case-specific and fact-intensive, requiring this Court to examine the error in light of the particular case. *People v Cain*, 498 Mich 108, 120; 869 NW2d 829 (2015). The violation of a technical provision of a court rule is not necessarily a violation of constitutional magnitude. See *People v Hawkins*, 468 Mich 488, 513; 668 NW2d 602 (2003). In this case, the court's error was a failure to comply with a requirement to make specific findings to support its finding under MCR 3.965(C)(2)(e). The referee *did* find that the child's placement away from the home was adequate to safeguard the child's welfare; it simply did not provide explicit findings in support. In light of the specific facts of this case, we conclude that this error did not affect the fairness of respondent's proceedings.

We affirm.

/s/ James Robert Redford
/s/ Randy J. Wallace
/s/ Andrew J. Lievense

-5-